Good morning, Your Honors. Alison Turner for the Appellants County of Los Angeles, former District Attorney Gil Garcetti and various prosecutors appealing the declaratory relief part of the judgment in this case. I'd like to start just by emphasizing what the alleged Fourth Amendment violation is in this case, what the harm is meant to be. It's nondisclosure that criminal defendants whose calls have been intercepted are being prosecuted with evidence derived from a surveillance and from a search warrant, from an investigation, the impetus of which was a wiretap, and the wiretaps were not disclosed to them. That's the situation. Is there a separable judicial deception element of that, though, as the district court indicated? There was a separate claim for judicial deception and judicial fraud, which we addressed on the cross-appeal, because if it's in the cross-appeal, although that's not clear because it wasn't clearly raised, that's a different issue. This issue was a per se Fourth Amendment violation that when this handoff procedure is used, and maybe I should clarify that, what the handoff is, the situation is that you have a unit in a police department intercepting calls on a legal wiretap. The court assumed it was a legal wiretap. That struck me as odd. Wasn't that an issue in the case, whether it was valid or not? It speaks really to It certainly would make a difference as to Whitaker. It might not as to the others. It doesn't as to the others. If, with respect to Whitaker, if the wiretap was lawful, then there's perhaps a different result than if it was unlawful. So I was a little puzzled by the assuming it's okay. Well, the district court did. I know, but we'd have to know a review because it's on summary judgment and these are legal issues before us. So why should we assume that? Well, on the merits, even if you don't assume it, even if you assume that there was an illegality there, then I think you go, you still have a jurisdictional problem for those plaintiffs who are criminal defendants. You have a heck problem with that. And you have a heck problem. Well, but do you have a heck problem on the judicial deception? Because how does that — how does the invalidity of the search warrant reflect on the plaintiffs' or, I guess, the defendants' conviction under the county's theory that there was no connection between the search warrant and their quasi-dictment? I think you have to separate issues. I mean, if you — you wouldn't have a heck problem if there was independent probable cause because you wouldn't have a Fourth Amendment violation. Is that your position, though? That you — that you wouldn't have a violation at all. Because the district court's belief was that you — there was no such thing as independent probable cause. You couldn't have it. It was but-for analysis from the beginning. There was an iron chain of causation. But under your theory, which is that there was not such an iron chain of causation, that they were separate. If, for example, Mr. Whittaker, his calls were intercepted, no — and the warrant was invalidly obtained, he has a cause of action, whether good or not. But my question was, how about those other plaintiffs? If you separate out the — the handoff issue, don't they — aren't they also free of a heck problem if, under the county's theory, there's no relationship between the invalid — the warrant that's — that's claimed to be invalid and their conviction? In order to say they — they don't have a heck problem, you have to say there was independent probable cause, so no Fourth Amendment violation. So we don't even have to reach the heck problem. But the warrant could still be invalid whether or not it resulted in convictions. Or are you saying that there's no Fourth Amendment issue? Where a warrant is invalidly issued, and it results in interception of calls? All right. If there was independent probable cause, then you would — you would have to look — and you had an illegal wiretap taking that situation. Then I think you look at the Smith case that came out of this circuit, where, in fact, you did have an illegal intercept. And — and the court in Smith said, how do you decide whether that taints the evidence? And the way — and the analogy is to the fruit-of-the-poisonous-tree notion for — in our situation, we're talking about disclosure. How do you decide to disclose the wiretap as opposed to how do you decide whether to exclude the evidence? And if — in Wong Sung, the fruit-of-the-poisonous-tree, set down the parameters for that, that if the evidence that is being used to prosecute people was come at by exploiting an illegal search, then it's tainted. But if it was come at by means sufficiently distinguishable, then it's not. In the wiretap — excuse me. I'm sorry. Well, in the wiretap situation, you would ask, is the evidence sufficiently connected to the wiretap so it has to be disclosed or arrived at by means sufficiently distinguishable? What Smith said then, filling in the gaps, was looking at sufficiently connected. And it's said that you ask whether the wiretap sufficiently — significantly pointed to specific evidence that was used against these individuals. If it's just a tip, if it's just a lead, and the evidence is come at independently. Well, in this case, the plaintiffs have — and I'll ask them about this, too. They have the problem that a jury found that their calls had never been intercepted, with the exception of Mr. Whittaker. That's the — that's the threshold problem for — for all the plaintiffs. I have a point. Could I just ask you about Mr. Gestalem, who, although the jury verdict form found that he was — his calls had not been intercepted, he was not actually one of the parties to the state law claim on the second amended complaint? Neither he nor Gaxiola were. The reason, being a technicality at the last minute, it was decided that they had not — since it was a state law claim, they had not complied with the Claims Presentation Act requirements under California law, where you have to present a claim first to the public entity, have it rejected, and then you can go sue. So they were taken off the special verdict. And our argument in the brief was, so what, because they were on the city. It was the same trial, same party, same evidence, joint action, so that the jury's finding on that should control. But Mr. Gestalem, I don't think, brought that claim, at least in the second amended complaint. He wasn't one of the parties who brought — raised a state law claim against either the city or the county. Well, it got confusing in there. At one point, the county was taking the position that they didn't even have a — Gestalem and Gaxiola didn't even have a Federal claim, and that was overcome. I would have to look at the record focusing on that, and I can't answer that. But here's the thing about Mr. Gestalem and Mr. Gaxiola, and this goes to the jurisdictional issue, that the argument is that the plaintiffs hang their jurisdictional argument on the hope that — on the piece of evidence that they may have been intercepted. And the district court said, yeah, there was evidence that they had been intercepted. The jury didn't buy some of the evidence, but the district court did. Even if the evidence that they had been intercepted was uncontroverted, unambiguous, accepted by all sides, if you consider what the harm is, the harm is nondisclosure. These were the two gentlemen who knew it for a long time. They had no harm. This whole case of declaratory relief, not to mention the other things, hangs on their having been harmed, and they weren't. Let me ask you a question about the relationship between the district court's factual assertion and the jury's finding. Even if the district court rules that there's enough evidence going both ways to go to the jury, once the jury decides, even though it's not on the claim that's now before us, is the district court and are we bound by the jury's finding of fact that no interception occurred by any defendant in the action? I think we are bound by that fact because of the Seventh Amendment and jury trial and the cases that say if there's a preliminary fact that goes both to declaratory relief and to claims for damages that would be heard by jury, the legal claims, the jury gets to decide it. And the problem was that at the very beginning, they're really whether the – I'm not sure at the beginning whether people realized what the problem was, but there was a sense that on the one hand, you had all this evidence of hiding the identities of the – companies were the only ones who were the subscribers on these cell phones and every step was taken so that you would never know whose phone it was. But then comes the damage claim and two people surface and say, hey, it's my phone. It was my number. I got intercepted. And it's on that evidence that the district court decided there was interception. But the jury heard that evidence and nonetheless found there – nobody had been intercepted. And now you have a situation where you have a judgment, it includes the declaratory judgment, and you have the judgment on the state law claim, and they rest on the fact that the judge didn't vacate the declaratory relief, which had been based on the notion that two people had been. Now, in this situation, the district court reached its ruling on the declaratory relief action before the jury came in with the – their determination on the state law claim. I didn't find any case looking at Seventh Amendment principles that was squarely on those facts where the judge had made a ruling, a determination, and then subsequently a jury verdict on a different claim. Clearly, what the district court did doesn't require – didn't require any reexamination of the facts found by the jury. What's the best case for saying that you then have to reach back and vacate the – a prior decision that was made by the judge? The best case, I think, is the Seventh Amendment, which says that if, you know, if there's an issue of fact, it should be decided by the jury. Well, it says that a court cannot reexamine a fact found by the jury. I think there are cases that we saw in our brief that they are bound by the jury's factual findings. I can look up my brief. I don't have the case name on the top of my head. But you could waive – you could always waive a jury. I mean, people have bench trials, and you can have collateral – That's not the – that's not an argument here, though. There was no argument. That is not an argument here. It was in the pretrial conference order whether this was an issue, and then it went to the jury on it. So it was never waived. A trial judge in one case can, you know, collaterally stop a jury in a next case from finding differently. Perhaps – But this was before. But this – This decision was before the jury verdict came in. Right. And it's the same case. So my question is, what's the principle or what's the case that holds that if there is a determination by the judge on one claim and subsequently a fact found by the jury that the district – that the court's prior opinion has to be vacated? I know of no case that's on point. I think you have to put it together with the notion of Seventh Amendment rights, with the notion that a case can become – something can become moot or something like – so the whole thing, it's like the declaratory relief. Because jurisdiction has to continue throughout the case, and suddenly here is a finding that suggests it doesn't. And at that point, you have to get rid of the declaratory relief. I think you just have to piece those cases together. Cases – there are other cases, I'm sure, where you can get all the way to the Ninth Circuit, and you're reviewing court, and suddenly realize it's a jurisdictional problem underlying everything, and you have to act on that. I've used more than my time, I believe. Are you supposed to be sharing with Ms. Berger? We're sharing. Okay. Well, she has five and a half minutes for – For rebuttal. She's going to rebut. She's going to rebut. She's on the cross-appeal. Oh, okay. On the cross-appeal. All right. Thank you. I'll hear from Mr. DeMassa. Please, Court. I'm Philip DeMassa, attorney for the cross-appellees – or the appellees cross-appellants. Listening to the Court's comments, I think it's the best way to address the issues that we have before us, at least as to the county, and I want to reserve about five or seven minutes for response to the comments of the city, if I may. You may, but it will be rebuttal, so if they don't raise any – you can't come back to what you're doing now, if that makes any sense. I can't look for something responsive to this. The 800-pound elephant in this case is Whittaker. He doesn't get barred by heck. He wasn't litigated in the State Independence Day claims. There was no jury finding against him that his conversations were or were not intercepted. So with respect to him, there's potentially this judicial deception claim that's available to him, but don't we have to sort of separate the wheat from the chaff with some of these other things, where the jury found that there was no interception? We do, and I think Judge Wray did that when he said, first of all, that the issues may have been different if the issues that were involved in the declaratory relief judgment had to be litigated in the trial. Two of the plaintiffs, Gastelum and Gaxiola, were not plaintiffs in the Independence Day claim. Those are significant. What if the jury did not make findings against the county on those two, made findings against the city on those two? Does that mean that the jury found that there was enough evidence? There was not enough evidence against the county, but there may have been enough evidence against the city to uphold the claims on Gaxiola and Gastelum. We're just speculating as to what occurred in the jury room. Why wasn't Mr. Gastelum on the Second Amendment complaint for either of the state law claims, either against the county or the city, and yet ended up on the jury's verdict form? I think it was just a mistake. Okay. What happened was just that Gaxiola and Gastelum did not file claims with the county to allow them to file a later lawsuit in Federal court, and Judge Wray ruled earlier that since they had not, then they were dismissed. I don't even know if I even included them as claimants because it was clear they had not filed claims. Whitaker, on the other hand, has been through the case, and I think the problem with this case is Judge Wray always looked at this case as basically a case of nondisclosure. He never looked at it in view of judicial deception, which he would say, well, if these criminally based plaintiffs had made those allegations, then they were trying to undo their convictions. Whitaker is in a different spot. Whitaker is complaining because his conversation is intercepted. He's a citizen. He doesn't have a felony problem. He's complaining that his attorney-client conversation was intercepted. The judge basically said, no, we're looking at one issue here, but in the complaint it's clearly stated in the first paragraph of the allegations that all the plaintiffs were complaining about the reasonableness of the invasions of privacy. That's a totally separate issue from the nondisclosure, the notice issue. There are many reasons why I don't think that Heck would apply even to the criminal defendants because Heck is a case where you've got people trying to upset their convictions and these plaintiffs. It isn't that narrow, as I understand the cases, including a recent one from this court I think last week or in maybe the week before, that Heck bars any claim that calls into question the validity of a conviction, even if it doesn't directly attack the conviction. So I have difficulty understanding how, if your claim is that the wiretap was wrong to begin with and the nondisclosure was wrong, and I take your argument to be, and there was nothing independent because it was these bad wiretaps and bad nondisclosures that led to everything else. If all that is true, why doesn't that undercut the validity of the convictions? Well, I haven't read the case that came out last week, so I apologize for not being up on that case. But the cases that I was reading last night, I think Kemna and some other cases, indicate that if there's a route to pursue to attack your conviction, which is a writ of habeas corpus, and you no longer have that remedy available, then this is an available remedy to seek a declaration of your rights. And I guess I misspoke there. A declaratory relief award here would not indicate any invalidity in their convictions. Why not? I mean, I'm not sure I totally understand your claim, but it seemed to me that your claim was that the whole scheme by which evidence was collected against your clients was unconstitutional. And if all of the evidence was collected unconstitutionally, then presumably it would have had to be excluded and there was no evidence to convict them. Well, I think there's a case called Ampaia, which indicated that you can have interceptions of conversations that don't necessarily lead to the conviction, and that's what we're complaining here. We're complaining not of incriminatory conversations. We're complaining of conversations that were overheard that went above and beyond anything incriminating. So to the extent that the plaintiffs had conversations intercepted that you're not claiming had an evidentiary fruit of the poisonous tree or whatever impact on their convictions, are you saying you still have a judicial deception claim? Yes. And the judicial deception claim with Mr. Whitaker, Judge Ray basically severed him from the case because he's the district court indicated that he didn't have any right to claim notice because he was an unnamed but known person on the wiretap. The problem with that analogy or analysis is California Penal Code section, I believe it's 628. I think it's 38, but I may be wrong, which gives any person the right to complain about the interceptions. And it doesn't necessarily limit it to a person who is criminally charged. So I think Judge Ray was incorrect when he said that even Mr. Whitaker didn't have a right to be noticed and told of the interceptions. He was clearly a known person, not just because he had an indictment or a conviction against him. He still had a right under the California Penal Code section to be advised. Now, the county counsel talks about Smith. I don't see how Smith and Ciccolini and these other cases, which are attenuation cases, have anything to do with what happened in this case. When you have something occur by a police officer and then you have months go by whereby an attenuation can properly be seen to occur, that's not what happened in these cases. Things happened almost instantly. Other than that, if the Court doesn't have any other questions, I'll reserve the rest of my time. You may, but I want to be clear that the only thing you're allowed to rebut on is the cross appeal. Yes. Okay. Oh, well, I may also say that, well, I'll save this for the cross appeal because it relates to the city. Well, rebuttal is rebuttal. So if they don't talk about your cross appeal, this is your last opportunity. So if there's anything else you want to say in your 11 minutes, you don't have to. But I just want to be clear that you can't get up and start over again. This is you can rebut only with respect to your cross appeal and only if it's rebuttal. Thank you, Judge. Well, I guess I will say, because they may not, the city did not file an appeal from the declaratory judgment. So by my reasoning, by not filing an appeal, they are they have admitted that declaratory judgment should enter. I would urge the Court to make that finding. As the Court knows from the briefs, we don't think a final judgment has been entered. We request that it should. But you treated it as one when you filed your notice of appeal. We did file a notice of appeal. But I think the Federal Rule 4 would allow us, when there's a motion for attorney's fees, and I think it occurred either that day or the day before or the day after, I'm not sure right now, would allow it to let it pen until the ruling on the final motions that were done, which would be in June. Well, it seems to me you're trying to get the best of both worlds. I think the Federal Rule 4, as it was in the methodology, wanted to appeal and treated everything as if it were final, even though the Court didn't put that piece of paper together as it was asked to do and as the rule suggests. But we also have some cases that say that if the parties treated as final and it actually disposes of everything, if you look at the series, that we'll also treat it as final and keep going. So why shouldn't we do that? Because I think what happened was that there was a defensive notice of appeal filed, and then the motion was either filed that day or the day after. And I can't indicate to you exactly when it was. But that indicated that if there were motion rule 4 indicates that there are motions pending, that really defers. If you file an earlier notice and you file motions, that defers the consideration of the notice of appeal until the end of that, which would make sense. You're not going to file two separate appeals. Now, I would say that no party in this case has been prejudiced at all by the fact that the motion, the attorney fee motion and the motion to enter one final judgment or amend the judgment was pending for two or three months. No one's claimed any prejudice. No one's objected other than it's they claim it's not timely because of the appeal issue. But earlier appeals can still be validated when they're considered after another motion has been filed. So you're saying you're arguing essentially that your first motion was premature, your first notice of appeal? I'm not sure I follow what you're asking us to do. On April 4th, I believe, we filed one more request for the judge to enter a final judgment. And we know he didn't do that. Right. But it was pending. So whether the appeal, now that was pending in April 26th or 27th, I believe. But once you had filed your notice of appeal, from what you considered to be a final judgment, what jurisdiction, what the district court have had to do anything other than deal with collateral matters like attorney fees? What could he couldn't have even filed a final judgment if you'd already treated the previous judgment as a final judgment? Well, I think Rule 4 allows the, if there's a pending motion that the time for appeal, if there's a pending appeal, it will be continued. So I think it's in 4B, but I'm not quite sure of that. In any event, the city has not filed any declaratory appeals. So we'd ask the Court to affirm that judgment. Thank you. Thank you. I'll hear from, who are we hearing from? Uh-huh. Ms. Turner. Very quick, and then I'll defer to the city. Mr. Whitaker might have some rights under statute, like the criminal code or something like that, or a privacy rights statute. What the district court correctly found was that he had no Fourth Amendment constitutional right arising out of this wiretap situation, that that, you had to be an unnamed, overheard criminal defendant. So if the government just decides to wiretap you because they feel like it, you don't have a Fourth Amendment claim? It wasn't a Fourth, not unless there was an illegal wiretap, but you, there's no case that says that. If you just happen to be picked up. No, I'm not talking about just happen to be picked up. If you're, if the government decides to pursue a wiretap against you and has no particular reason to do it other than they decide, well, it's Monday morning and this seems like a good idea. And you're named in the warrant for the wiretap. Yeah. So are you saying that you. Then you might. Then you might. We're talking about here the, and I don't. There's an unlawful warrant issued because the party seeking the warrant deceived the judge who issued the warrant. And as a result of that unlawful warrant, your conversations are picked up. You, as just a private citizen, have no Fourth Amendment. No, you do. In that situation, you would. Isn't that what Mr. Whitaker is alleging? That's what he's alleging, but maybe, because what I said in my briefs, and I really believe it, there were, there was language down below where plaintiffs said there are no judicial deception claims. I think it was first raised by the city was saying maybe if there was a judicial deception claim. The plaintiff's lawyer said there are no. We're just looking at the Second Amendment complaint and what happened there from that, because that's the pleading that is in front of us, correct, the Second Amendment complaint? That's the. Okay. Right. But at one point in the proceedings on the summary judgment motion, plaintiff's lawyer stood up and said there are no judicial fraud claims. And on appeal, I would submit, and I said it in my brief and I won't say it again, it was really hard to tell what his issue was. There was no clear statement in there. Under the Ninth Circuit standard, you have to specifically address with argument, reference to cases and records, and state your issue. And it simply wasn't done. We were just guessing, and then we proceeded from there. But I don't want to take many more time on that. I would just say on the fee issue that was brought up here, it sounds like he's trying to get in under Federal Rule of Appellate Procedure 4A, where sometimes a motion for attorney fees can extend the time for filing a notice of appeal, but only if the district court does certain things, only if the district court says, you know, the motion for attorney's fees will be like a new trial motion or something. We'll treat it the same. None of that happens here. The fact is it's separately appealable, and he did not appeal it. It's an independent claim. And then on the last thing, on the unavailability of the heck remedy, I want to apologize. I made a misstatement in our reply brief. I said something to the effect that sentences of these individuals ran from three months to 17 years. It should have been, and that's on page 80 and page 35 of my brief, it should have been three years to 17 years. And my point being there was plenty of time after they knew about the wiretap. But what about Mr. Delgado? Wasn't he out within three months, I think is what they said. That was my mistake. That's the mistake I'm trying to correct. I got it right in the opening brief and in the record. It's Virginia Delgado. She is not three months. The site is, let's see where I have it. In my reply brief, I said three months, and I apologize for that on page 35. The record in my excerpts of record, page 335 is the minute order. It puts it at three years after some jail time. And I got it right in the opening brief on page 15. The Portillo plaintiffs, as a group, they got three years to 17 years. They were sentenced within seven months. The word went out about the wiretap. They still had plenty of time to go on their sentence. Thank you. Thank you. And, Ms. Berger, at long last, you have a minute. Good morning, Your Honors. Lisa Berger, Deputy City Attorney for Cross Athletics. My name is Lisa Berger.  And I'm here to speak on behalf of the city, the city police, the city and named police officers. Actually, the only thing that I was going to say was that the plaintiffs appealed the judgment in favor of the city. As a result of that, the city has the right to raise any issue that would lead to the affirmance of that judgment, including issues that may have been part of the court's declaratory judgment. There is no reason that the city cannot, as part of its responsive pleadings or a briefing, to raise the constitutionality, the finding of an unconstitutional violation through the handoff procedure. So you're not suggesting any alteration in the judgment involving the city? You're just asking for it to be affirmed as is? That's correct. For any variety of reasons? Correct. Whatever that judgment is, you're happy with the judgment? And if this court's finding, for example, if this court finds that summary judgment was properly granted because there was no constitutional violation, which is the city's position, then I hope you will publish that opinion. Okay. Your time has expired. Okay. And, Mr. DeMassa, you may rebut with respect to new matters raised on the fee question, which is the appeal, the cross-appeal, rather. I'm sorry. It's a nice argument to say, well, you can consider everything, and maybe that will impact on their failure to file something on the appeal on the declaratory judgment issue. But the truth of the fact of the matter is that they did not file a notice of appeal, and they were content with that verdict. Now they're trying to use another way to try to attack it without formally appealing it. Other than the fact that they failed to file the notice of appeal, I think the declaratory judgment, at least as to Whitaker, is still in effect, has no impact on anybody else. The declaratory judgment should remain in effect because of the policy and the procedure of the city and the county in this case of doing this incredible amount of harvesting of wiretapping and nondisclosure that went in this case. And it's, I think, when you read Judge Ray's opinion, you can see his surprise and anger at the way this was done across the street, as we say, in state court. And we'd ask the Court to affirm those decisions and also ask to reverse the decision regarding summary judgment. Thank you. Thank you, counsel. We appreciate the arguments that all of you have brought to us today. And the case just argued is submitted.
judges: T.G. Nelson, Graber, Ikuta